## HARRY AULDAY v. STATE.

166 So. 826.
Division B.
Opinion Filed March 31, 1936.

R. H. House, Frank Redd and Marion B. Jennings, for Plaintiff in Error;

Cary D. Landis, Attorney General, and Roy Campbell, Assistant, for the State.

ELLIS, P. J.—Harry Aulday was indicted in October, 1933, by the grand jury for Sarasota County for the larceny of a steer, the property of J. H. Daughtry. On November 9th of that year he was found guilty as charged and judgment of conviction and sentence entered. To that judgment he took a writ of error.

It appears from a plea of former jeopardy interposed on November 7th that Aulday was tried upon the indictment in October; that after testimony was submitted and counsel had argued the case and the charge had been given to the court and jury had retired to consider of their verdict, the judge of the court of his own motion without legal or physical necessity therefor ordered the jury to disperse that they might return to their homes, but instructed them to resume their deliberations at ten o'clock A. M. the following day. The plea does not aver that the defendant objected to such procedure, nor does it aver that the jury returned pursuant to instructions, nor what came of their deliberations upon reconvening. The plea, however, is replete with conclusions of law.

There was a demurrer. The court denied the plea, to paraphrase the language of the record. The demurrer was evidently sustained. There was no error in such order.

It appears from an affidavit, which has no place in the record, that the jruy reconvened as the court instructed them to do, and considering the evidence again as directed they announced their inability to agree, and a mistrial was declared.

Taking the averments of fact contained in the plea, it falls short of many of the elements which constitute former jeopardy. It does not appear that the jury was discharged. The members were merely allowed to disperse for the night and were ordered to reconvene the following day, which

they did and resuming their duties could not agree. A mistrial resulted. See Allen v. State, 52 Fla. 1, 41 South. Rep. 593, 120 Am. St. Rep. 188, 10 Ann. Cas. 1085; White v. State, 63 Fla. 49, 59 South. Rep. 17; Smith v. State, 40 Fla. 203, 23 South. Rep. 854; State v. Dowling, 91 Fla. 236, 107 South. Rep. 267.

The plea does not aver that the jury was discharged. On the contrary it avers that the members of the jury were merely allowed to disperse temporarily. The plea should have shown that the jury was discharged arbitrarily or capriciously, or without cause or necessity. The plea shows on its face that the jury was not discharged.

Whether the corut erred in permitting the jury to disperse may present another question, but as the result of such dispersing seems not to have injured the accused, he would have no ground of complaint. There was nothing in the court's action to deprive the accused of protection from a vexatious criminal prosecution. The trial in November following was in no sense a second criminal prosecuton for the same offense.

It is also contended that the Judge, Paul C. Albritton, was disqualified and should not have presided at the trial. The affidavit in support of that suggestion was made by the accused on the 6th day of November at which term of the court the accused was indicted. The allegations of the affidavit are remarkable in that the judge of the court is charged with a virtual conspiracy with the sheriff to convict the accused "regardless of his guilt or innocence."

It is alleged that "there is a close alliance between the said judge and the sheriff's office and also the state attorney's office, which said sheriff's office and state attorney's office are desirous of convicting the defendant and thereby be rid of him because of his being an undesirable

citizen as they think, because of the fact that defendant has opposed politically the present sheriff and State Attorney."

It is further alleged "that the said Judge has relatives in South Florida who own cattle running on the range, that such cattlemen, and all cattle barons throughout south Florida are always desirous of convicting whenever possible, any person that might be charged with cattle stealing; that these facts are known to the said Judge and that he is influenced thereby and prejudiced against any person charged with cattle stealing, and particularly this defendant; and by reason of such prejudice and bias this defendant fears that he will not receive a fair trial as aforesaid."

Other affidavits of like character were filed. The suggestion of disqualification was denied, and the Judge proceeded to hear and determine the case on its merits. The circumstances in which the affidavits of disqualification were submitted were such that the accused could not have made the suggestion earlier.

The allegations are of such a character that it is impossible for one to say that if they were true the accused would have been protected in his right to the " 'cold neutrality of an impartial judge.' " State v. Rowe, 100 Fla. 1382, 131 South. Rep. 331.

In this connection, without further comment upon a situation existing in the practice of law and the administration of justice depicted by the affidavits, nothing more may be said than to quote the words of Mr. Justice TERRELL in State v. Rowe, *supra*:

" 'Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge.' It is the duty of courts to scrupulously

guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice."

For the error in not recusing himself upon the filing of the affidavits mentioned, the judgment is reversed.

TERRELL, and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.